Michael KUNIK and Lisa Kretschmer, Plaintiffs–Appellants,

v.

RACINE COUNTY, WISCONSIN, et al., Defendants–Appellees.

No. 95–3414.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1996.

Decided Jan. 30, 1997.

Rick Halprin, (argued), Chicago, IL, Thomas Peters, Murphy, Peters & Davis, Chicago, IL, for Michael Kunik.

Rick Halprin, Chicago, IL, Victoria Kies Garoukian, Racine County Corporation Counsel, Racine, WI, Thomas Peters, Murphy, Peters & Davis, Chicago, IL, for Lisa Kretschmer.

Mark Vannucci, Victoria Kies Garoukian, Mark Janiuk, (argued), Racine County Corporation Counsel, Racine, WI, for Racine County, Wisconsin, Racine County, Wisconsin Sheriff's Department, Robert L. Rohner.

Mark Vannucci, Victoria Kies Garoukian, Racine County Corporation Counsel, Racine, WI, for Patrick Ketterhagen, James Litwin.

James L. Santelle, (argued), Office of the United States Attorney, Milwaukee, WI, for John R. Schaefer.

James L. Santelle, Office of the United States Attorney, Milwaukee, WI, Mark Vannucci, Racine County Corporation Counsel, Racine, WI, for Henry Creekmore, Robert Schaneck.

Before RIPPLE, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

An issue of appellate jurisdiction is the first of several procedural points on which this case turns. Earlier, in *Kunik v. Racine County (I)*, 946 F.2d 1574 (7th Cir.1991), this Court concluded that several claims brought by plaintiffs Michael Kunik and Lisa Kretschmer under 42 U.S.C. § 1983 against the individual Racine County, Wisconsin, defendants adequately stated claims for purposes of Fed.R.Civ.P. 12(b)(6). On remand to the district court, discovery proceeded, and the district court granted summary judgment in favor of the defendants. A confused set of proceedings followed, which we discuss

below, in which the plaintiffs attempted to file first a motion for reconsideration of that order and then a notice of appeal. We conclude that their efforts were successful to bring both the summary judgment ruling and the denial of reconsideration before this Court, but we agree with the district court that summary judgment was proper for the defendants.

# I

Because we are now reviewing the grant of summary judgment, the factual background of the case has been developed more fully than it was in *Kunik I*. We review those facts in the light most favorable to Kunik and Kretschmer and present them here from that perspective. This lawsuit had its genesis in the criminal investigation of the murder of taxi driver Robert Buckley, in Racine County, Wisconsin, around May 30, 1984. Defendant Patrick Ketterhagen was the primary investigator for the homicide unit of the Racine County Sheriff's Department. Two potential witnesses, Frank Brackett, Sr., and Frank Brackett, Jr., alerted Ketterhagen to the possibility that two sailors from the nearby Great Lakes Naval Base, to whom they gave a ride back to Great Lakes that night, may have been responsible. The Racine authorities accordingly requested assistance from the Naval Investigative Service (NIS) at Great Lakes, which responded by assigning NIS Special Agent John Schaefer to the case.

Some time between May 31 and June 19, one Henry Creekmore contacted Schaefer and furnished information implicating Kunik, Kretschmer, Chester Adams, and James Hodges in the murder. Based on that information, Schaefer and Ketterhagen prepared photographic spreads with pictures of Kunik and Adams, which they showed to the Bracketts and Sandy Rexilius, a store clerk who had seen two sailors on the night in question. Brackett, Jr., positively identified Adams as one of the two men who came to his home on the night of the murder, and Rexilius positively identified Kunik as one of the two men who were with Brackett, Sr., in her store. Brackett, Sr., was unable to identify either Kunik or Adams, although he thought that Kunik might have been one of the two men he drove back to Great Lakes that night. Finally, Ketterhagen and Schaefer interviewed Hodges, who said that he was present when Adams and Kunik allegedly planned the murder of a cab driver. Hodges also claimed that Adams had told him that Adams had stabbed the cab driver while Kunik took his money and Kretschmer hid in the bushes.

The next day, warrants were issued for the arrests of Adams and Kunik. The authorities caught up with Adams in Pennsylvania, along with Kretschmer (his girlfriend), whom they also arrested under an earlier Lake County, Illinois, warrant for an unrelated offense. They found Kunik in Kenosha County, Wisconsin. Much of the present lawsuit is based on the interrogation of Kretschmer that followed these arrests; Kunik, for his part, consistently declined to make any statement. Kretschmer first offered the alibi that she was out on a birthday date on the critical night, but her social engagement proved to have taken place the night before. Continuing their interrogation, Ketterhagen and Schaefer misleadingly told Kretschmer that they had information leading them to believe that she was involved in the murder, that she had lied, and that Kunik had accused her of involvement in the crime. They discussed her personal situation, including the fact that she was pregnant, that she could end up having the baby in prison (implicitly if she did not cooperate), and that she might be able to get help for her substance abuse problem if she helped them. During the same interview, Kretschmer eventually admitted that she had not told the truth in her prior statement; in her second statement, she implicated Kunik and Adams, as well as herself and Hodges. Some time after this conversation, the Racine County Circuit Court issued a warrant for her arrest in connection with the Buckley murder. She later recanted her incriminating statements, both prior to the trial and at trial, claiming that they had resulted from Schaefer's and Ketterhagen's "intimidation, threats and coercion." As *Kunik I* noted, both Kunik and Adams were acquitted at the trial, and Kretschmer had received immunity prior to testifying.

Based on this record, the plaintiffs' complaint alleged that the individual Racine County defendants (who are the only ones left at this point) conspired to violate their civil rights, in violation of 42 U.S.C. § 1983 (Count I), and that they violated their civil rights by falsely accusing and arresting Kunik and Adams (Count III) and by falsely arresting and imprisoning Kretschmer on the murder warrant (Count IV). The complaint also contained other counts that *Kunik I* held were properly dismissed. 946 F.2d at 1580, 1582. At this stage, therefore, we have only to consider the conspiracy and substantive claims brought by Kunik and Kretschmer against Sheriff Robert Rohner and Deputies Ketterhagen and James Litwin, in their individual capacities.

## II

The posture in which the district court received the summary judgment motions is important to our evaluation of the court's ruling. In keeping with Eastern District of Wisconsin Local Rule 6.05, the defendants supported their motion with extensive evidentiary materials, including detailed affidavits from the officers involved, deposition transcripts of the parties involved, court records and transcripts from the underlying criminal case, and similar materials. Based on those submissions, they also offered separately numbered proposed findings of fact. In response, as the district court put it, "the plaintiffs [did] not put forward a single affidavit, transcript, declaration, document, admission, interrogatory answer or other form of sworn or authenticated evidentiary material to rebut defendants' submissions. They [did] not specifically contest or respond to the formal findings of facts submitted by the defendants. Plaintiffs merely submit[ted] the factual and legal arguments contained in a brief filed by their counsel." Local Rule 6.05(d) provides that "[i]n deciding a motion for summary judgment, the court will conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." See also Fed.R.Civ.P. 56(e). Following those rules, the district court concluded that summary judgment for the defendants was "compelled."

In the interest of caution, however, the district court also chose to go the extra mile and to comb through the record on its own to see if there was "any evidence or testimony that may support plaintiffs' allegations that Schaefer (who was dismissed from the case in *Kunik I*) and Ketterhagen conspired to and did knowingly obtain false evidence against Kunik and Kretschmer for the purpose of procuring their false arrest and imprisonment in violation of 42 U.S.C. § 1983." In the end, the court found only evidence that the two investigators used tactics that were intended to play on the witnesses' natural fears and self-interest. Viewing the case from the perspective of the law of qualified immunity, the court concluded that a reasonable officer would not have known either that the tactics in question were inherently coercive and violated clearly established law, or that the information elicited was clearly false. Thus, even apart from the plaintiffs' inadequate presentation of their motion, the court ruled that summary judgment for the remaining defendants was appropriate.

That judgment was officially entered on July 6, 1995. On July 17, 1995, the plaintiffs filed a motion for reconsideration under Fed. R.Civ.P. 60(b)(1), claiming that their failure to include supporting materials with their response to the summary judgment motion was the result of "excusable neglect." Astonishingly, the basis for this claim was plaintiff's counsel's explanation that he had simply signed the summary judgment brief without reading or reviewing it, which was why he knew nothing about its striking deficiencies. In his reply brief, plaintiff's counsel also argued that he no longer needed to rely on Rule 60, because he had now "reconciled the record" with the court's ruling on summary judgment. His "reconciliation" showed, he claimed, that the court's order granting summary judgment was not supported by the record.

In an order dated September 22, 1995, the court denied the motion for reconsideration. With respect to the claim of excusable neglect, the court pointedly noted that the record suggested attorney negligence, which is not at all the same thing as excusable neglect. Indeed, the court suggested, counsel's

conduct appeared to be an obvious violation of Rule 11, which led the court to issue a show cause order based on Rule 11. (The court later fined counsel $500 for violating Rule 11.) With respect to the reply brief, the court dismissed counsel's arguments as untimely, since they had not been raised in the opening submission. The court also commented that the materials on which counsel relied did not create a genuine issue of fact for trial. The fact that the officers admitted knowing that the plaintiffs claimed to have alibis with some evidentiary support was not enough to show that they wanted to frame the plaintiffs. Nothing they claimed about coercion changed the court's view about the objective nature of the tactics the officers had used. Finally, the fact that the jury acquitted the plaintiffs in the underlying criminal case simply did not meet the more specific claims in the § 1983 case and the defendants' Rule 56 evidence.

### III

On October 6, 1995, plaintiffs filed a Notice of Appeal which read as follows:

Notice is hereby given that MICHAEL KUNIK and LISA KRETSCHMER, Plaintiffs above named, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the final judgment entered in this action on the 22nd day of September, 1995.

The first question we must decide is whether this Notice of Appeal, referring as it does only to the "final judgment" entered on September 22, 1995, suffices to bring up the earlier order granting summary judgment to the defendants as well, or if it is limited to the denial of the Rule 60(b) motion that actually occurred on that date (which was not technically a "final judgment" in the usual sense of that term). In their opening brief, the plaintiffs did not address this question, but the defendants fired back with a brief resting solely on the ground that the only order properly before us is the Rule 60(b) ruling, and that this decision cannot be regarded as an abuse of discretion. Plaintiffs responded with a reply brief arguing that both orders are encompassed within the Notice; defendants moved to strike the reply brief or to file a surreply; and plaintiffs opposed that motion.

Rule 3(c) of the Federal Rules of Appellate Procedure requires a notice of appeal to "designate the judgment, order, or part thereof appealed from." That rule, however, does not mean that every individual order in a case that preceded final judgment must be separately designated in order to be part of the appeal. To the contrary, one implication of the final judgment rule codified in 28 U.S.C. § 1291 is that the appeal from the final judgment in the action brings up all interlocutory rulings that preceded it. This is straightforward enough if the question is whether one is entitled to complain about something like the denial of a motion for judgment as a matter of law in an appeal from a final judgment on a jury verdict: the answer is obviously yes. The more difficult cases involve final judgments *followed by* different kinds of post-trial motions. For those cases, Fed. R.App. P. 4(a)(4) provides the relevant guidance. As the Supreme Court recently noted in *Stone v. INS,* —— U.S. ——, ——, 115 S.Ct. 1537, 1548, 131 L.Ed.2d 465 (1995):

the majority of post-trial motions, such as Rule 59, render the underlying judgment nonfinal both when filed before an appeal is taken (thus tolling the time for taking an appeal), and when filed after the notice of appeal (thus divesting the appellate court of jurisdiction). Other motions, such as Rule 60(b) motions filed more than 10 days after judgment, do not affect the finality of a district court's judgment, either when filed before the appeal (no tolling), or afterwards (appellate court jurisdiction not divested). Motions that do toll the time for taking appeal give rise to only one appeal in which all matters are reviewed; motions that do not toll the time for taking an appeal give rise to two separate appellate proceedings that can be consolidated.

In this case, the plaintiffs filed a motion under Rule 60(b) within "ten days" of the court's entry of summary judgment. (We put "ten days" in quotes because, under Fed. R.Civ.P. 6(a), Saturdays, Sundays, and holidays are excluded from the computation when the specified time is less than 11 days;

this is why the time from July 6 to July 17 can be called a ten-day period.)

This court has held for some time, under the pre–1995 version of Rule 59(e) that governs here, that a motion designated one for reconsideration should be considered as a motion to alter or amend the judgment if it was served within ten days of the entry of the judgment; if it was served beyond the ten-day period, it fell under Rule 60(b). See *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994); *United States v. Deutsch*, 981 F.2d 299, 300 (7th Cir.1992). See also *Lentomyynti Oy v. Medivac, Inc.*, 997 F.2d 364, 368 (7th Cir.1993) (substantive motions filed within ten days of judgment are presumed to be Rule 59(e) motions). These cases were decided before the 1995 amendment to Rule 4(a)(4), which added a motion under Rule 60(b) to the list of motions that have the effect of tolling the time to take an appeal from a final judgment. See Rule 4(a)(4)(F) (effective date December 1, 1995). The 1995 amendments also changed the crucial date for the ten-day period from the date on which the Rule 59(e) (or other) motion was *served* to the date on which it was *filed*, in the interest of clarity, but that modification is of no importance to our case. Because this notice of appeal was filed before the amendment took effect, the *Deutsch* line of cases governs here. We therefore treat the July 17 motion as if it had been designated one under Rule 59(e) and consider whether, as such, the July 6 judgment is reviewable now.

We conclude that this case is governed by the principle established in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), in which the Supreme Court held that an appeal from the denial of a Rule 59(e) motion was also sufficient to bring the underlying judgment before the appellate court. The Court cautioned that "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Id.* at 181, 83 S.Ct. at 230. It is enough if the notice of appeal does not mislead or prejudice the responding party and the intent to appeal from the underlying judgment can fairly be ascertained from the notice.

In *Chaka v. Lane*, 894 F.2d 923, 924 (7th Cir.1990), this Court applied *Foman*, explaining that a Rule 59(e) motion to amend "suspends the finality of the judgment; the order denying the motion is in a sense the 'final decision' in the case." In *Chaka*, the notice of appeal had specified an interlocutory order that merged into the final judgment, which led the court to treat the appeal as limited to the questions raised by that order. Here, in contrast, we have the more common situation where the notice of appeal refers to the final order. As the Supreme Court later commented in *Stone, supra*, a notice of appeal filed after the disposition of a Rule 59 motion (or its equivalent) "give[s] rise to only one appeal in which all matters are reviewed." —— U.S. at ——, 115 S.Ct. at 1548. See *Matter of Grabill Corp.*, 983 F.2d 773, 775 (7th Cir.1993) (appeal of the denial of a motion properly classified as a Rule 59(e) motion brings up for review all nonmoot orders rendered by the trial court). See also *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir.1995) ("an appeal of a denial of a Rule 60(b) motion brings up for review only the denial of the motion, *unless it is filed within ten days of the entry of the judgment*") (citing amended Fed. R.App. P. 4(a)(4)(F); emphasis added).

■ Unfortunately for Kunik and Kretschmer, the consequence of our ruling that the July 7 order granting summary judgment for the remaining defendants is properly before us is small as a practical matter. We consider here both the court's ruling on the Rule 60(b) motion and its ruling on the motion for summary judgment. Looking first to the Rule 60(b) motion, to which the defendants have urged us to limit our attention, we have no trouble concluding that the district court's denial was by no stretch of the imagination an abuse of discretion, which is the proper standard of review for such rulings. *Browder v. Director, Ill. Dept. of Corrections*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Mares*, 34 F.3d at 535; *Del Carmen v. Emerson Electric Company, Commercial Cam Division*, 908 F.2d 158, 161 (7th Cir.1990). Indeed, we share the district court's concern with the manner in which counsel for the plaintiff was handling this

case. Excuses about failing to read motions before they are filed and untimely reviews of the record for supporting evidence reveal cause for sanctions; they are not the kind of "excusable neglect" that Rule 60(b) is designed to address.

Second, reviewing the district court's summary judgment ruling *de novo*, we are similarly confident that the court committed no error. This court has repeatedly upheld the right of district courts to enforce local rules like the Eastern District of Wisconsin's Local Rule 6.05, which are designed to facilitate the summary judgment process. *Doe v. Cunningham*, 30 F.3d 879, 882 (7th Cir.1994) (Local Rule 6.05 is "entirely proper"); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir.1995) (affirming right of district judges to require strict compliance with Northern District of Illinois Local Rule 12(N), which is similar to Local Rule 6.05); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992) (same). On the record before him, Judge Randa was justified in finding that no genuine issues of material fact had been identified that required a trial. Sheriff Rohner and Deputies Ketterhagen and Litwin, according to their own evidentiary submissions, never intimidated, pressured, threatened, or coerced any of the subjects of their investigation; they never promised any favors to Kretschmer in exchange for her cooperation; and they conducted the investigation in good faith. On those uncontested facts, the potential claim under § 1983 for false arrest or false imprisonment that this court's *Kunik I* decision identified did not materialize.

Kunik and Kretschmer make much of the fact that the judge voluntarily searched the record for evidence that might have supported their claims, but we are reluctant to allow his conscientiousness to excuse their untimely efforts to salvage their case. Furthermore, as the judge pointed out, at most the record shows (1) that the officers continued to interrogate Kretschmer even after they learned that she had an alibi that was corroborated, (2) that they pressured her to confess by using a variety of investigative techniques that were more overbearing than normal social discourse,

and (3) that the criminal jury was not persuaded beyond a reasonable doubt that Kunik and Adams committed the murder. The first and third of these points are plainly insufficient to raise a genuine issue of fact here. There is no rule that investigating officers must stop their inquiries once a witness offers an alibi that someone else independently corroborates, and it is therefore impossible to find that the officers here behaved improperly when they continued questioning Kretschmer under those circumstances. Contrary to Kunik and Kretschmer's argument, the acquittal of Kunik and Adams does not inevitably mean that the jury must have believed Kretschmer and Hodges when they claimed that their earlier confessions had been coerced. The jury could have found those two witnesses sufficiently unreliable that they disregarded them entirely. Furthermore, the question whether Kretschmer and Hodges subjectively felt coerced is not the same as the central question in the § 1983 action, namely, whether the officers intentionally took steps to effectuate false arrests or imprisonments. Like the district court, therefore, we see nothing in these two points that suggests summary judgment was wrong.

With respect to the second point, as noted above, the district court concluded that the doctrine of qualified immunity rendered immaterial any potential questions of fact about the degree of coercion the officers were using. Viewing the record in the light most favorable to Kunik and Kretschmer, the officers misled Kretschmer and tried to trick her into confessing. They also played on her physical vulnerability as a pregnant woman and implied that only by cooperating would she be able to have her baby outside of prison. We have no occasion either to approve or disapprove of these kinds of investigatory tactics, because we agree with the district court that this conduct did not violate clearly established rights of which reasonable officers would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir.1996). Moreover, there is nothing suggesting that a reasonable police officer would know that a confession

obtained under those circumstances was so inherently unreliable that an arrest based upon it would violate the constitutional rights of the person detained. Far from it; there is much to suggest that such confessions might nonetheless be considered "voluntary" as a matter of law, and arrests are based on them every day. See, *e.g.*, *United States v. Montgomery*, 14 F.3d 1189 (7th Cir.1994) (confession voluntary where defendant was told his pregnant wife was also likely to go to jail and his child would probably be born in jail); *Sotelo v. Indiana State Prison*, 850 F.2d 1244 (7th Cir.1988) (confession voluntary where defendant was told his companions contradicted his alibi, although police had not yet spoken with companions). Consequently, on the undisputed facts before us, even taking into account the most favorable version we can imagine for Kunik and Kretschmer, the district court was correct to conclude that qualified immunity protected the officers from this suit.

For the foregoing reasons, the judgment of the district court is AFFIRMED in all respects.