**Charles H. KUIPER, Sr., et al., Plaintiffs,**

v.

**AMERICAN CYANAMID CO., Defendant.**

**No. 93–C–566.**

United States District Court, E.D. Wisconsin.

Feb. 24, 1997.

Robert H. Bichler, Hostak, Henzl & Bichler, Racine, WI, for plaintiff.

Winthrop A. Rockwell, John P. Mandler, Faegre & Benson, Minneapolis, MN, Kenneth B. Ness, Ness & Foley, Milwaukee, WI, Lawrence S. Ebner, McKenna & Cuneo, L.L.P., Washington, DC, for defendant.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on plaintiffs' motion for relief from judgment, motion to supplement the record, motion to extend the time for filing a notice of appeal, motion for supplemental order on appeal, and motion to expand the appellate record. The matter previously came before the Court on dispositive motions filed by the defendant, American Cyanamid Company ("ACC") The Court granted those motions in a published decision and dismissed the case on grounds of federal preemption. *See, Kuiper v. American Cyanamid Co.,* 913 F.Supp. 1236 (E.D.Wis.1996). In that decision, the Court made extensive findings of fact, familiarity with which is presumed, and which are incorporated here by this reference. *Kuiper,* 913 F.Supp. at 1237–38. The plaintiffs, Charles

H. Kuiper, Sr., Mae E. Kuiper and Charles A. Kuiper, Jr., all doing business as Charles H. Kuiper & Son Farms (collectively, "the Kuipers"), now ask the Court for relief from that judgment under Fed.R.Civ.P. 60(b)(6), based upon certain discovery materials obtained shortly before the Court issued the judgment. Specifically, the Kuipers submit deposition testimony of an ACC official implying that FIFRA does not contain labeling requirements for rotational crop restrictions and other testimony stating that the EPA does not develop product labels for manufacturers under FIFRA. The Kuipers also submit ACC advertising materials allegedly making claims about the SCEPTER product that are "substantially different" from the claims contained in the SCEPTER label. Further, the Kuipers argue that a subsequent decision from the United States Supreme Court substantially narrows the scope of federal preemption in this case. All of the foregoing, according to the Kuipers, merits relief from the prior judgment.

The Kuipers also ask the Court (1) to supplement the record in this case with the additional documents referenced above and with other transcripts and evidence related to the "causation" issue, (2) to extend the time for filing an appeal and issue a supplemental order on appeal, and (3) to expand the record for purposes of appeal. The Court addresses all of their requests below.

## I

With regard to the motion for relief from judgment, the first question is whether the motion is properly brought under Rule 60(b)(6). Rule 60(b)(6) is a catch-all provision and provides for relief from a judgment or order for "any other reason justifying relief from the operation of the judgment." While the Kuipers do not address how their motion fits within this category, it is clear that they seek relief from the judgment on three grounds: (1) recently-obtained evidence withheld by ACC shows that the Court was wrong in its legal conclusion that FIFRA contains labeling requirements for rotational crop restrictions; (2) recently obtained evidence withheld by ACC shows that ACC made representations in its advertising mate-

rials which were "substantially different" from the representations on the SCEPTER label; and (3) subsequent Supreme Court precedent has altered the law on federal preemption. The first two grounds, essentially based on the non-production of material evidence, can give rise to relief under Rule 60(b)(6). *See generally, Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572 (D.C.Cir. 1980). The third ground, a change in Supreme Court precedent, cannot give rise to such relief, because "it is well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6)." *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 757 (2nd Cir.1986), citing, *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) and *Loucke v. United States,* 21 F.R.D. 305 (S.D.N.Y.1957). In any event, the Court will address the merits of each argument.

▮ The Kuipers first argument was previously raised in opposition to ACC's motion for summary judgment. The Kuipers argue that FIFRA preemption does not apply to common law claims relating to rotational crop restrictions because neither FIFRA nor the regulations implementing the same contain labeling requirements regarding such restrictions. In support of this argument, they submit deposition testimony from Walter Congleton, a former ACC agriculturist and current member of ACC's management, opining that the rotational crop restriction contained in ACC's SCEPTER label "related to residue information and really has no applicability to the performance of a subsequent crop planted after the use of the product." The Kuipers also submit testimony from Morton McDonald, Jr., a former ACC employee, stating that the EPA does not develop product labels for use by manufacturers but only reviews labels proposed by the manufacturers themselves. In this regard, the Kuipers reiterate that the EPA did not even request or consider follow crop studies in connection with its approval of the SCEPTER label.

Such "new" evidence does not alter the Court's conclusion on the preemption issue. Whether or not FIFRA and the regulations implementing the same contain labeling requirements for rotational crop restrictions is a question of law for the Court to decide, not a matter of opinion for current or former ACC employees. Moreover, the Kuipers' argument is similar to arguments rejected by other federal courts and which claimed that rotational crop restrictions are "voluntary" disclosures not mandated under FIFRA or the regulations. *See, Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 72–73 (8th Cir. 1995); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 748–49 (4th Cir.1993) *Worm v. American Cyanamid Co.,* both discussing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Plaintiffs in those cases argued that, because such disclosures are voluntary, claims based thereon were more in the nature of "express warranty" claims, which the *Cipollone* Court held not to be preempted by federal statutory provisions precluding the issuance of different or additional state law "requirements". *Id.* The 8th and 4th Circuits disagreed, finding that rotational crop restrictions were expressly required under FIFRA's regulations:

> Finally, the Worms contend that American Cyanamid could voluntarily make additional disclosures and representations about Scepter and that it in fact did so when it modified its label to state that in drought conditions Scepter may have a greater carryover effect. They argue that American Cyanamid's failure to make a voluntary disclosure earlier and its breach of express warranties regarding Scepter's carryover effect fall in the range of voluntary conduct found not preempted by Cipollone. Relying on Cipollone, they argue that "a federally mandated warning does not preempt a state law remedy for breach of a contractual commitment that is voluntarily undertaken." [citation omitted.]

> This argument, however, fails to recognize that American Cyanamid's inclusion on its label of the information that corn could be safely planted 11 months following application of Scepter was not voluntary. Such statements concerning rotational crop use are expressly required by the regulations adopted under FIFRA. See 40 C.F.R. section 156.10(i)(2)(x)(B).

*Worm II,* 5 F.3d at 748–49.

We are faced with precisely the same issue. The express warranty claim of the

Welcherts is based entirely on the label's statement with regard to the herbicide's carryover effect.... As noted in Worm, federal regulation requires a pesticide manufacturer to provide labeling information about rotational crop restrictions. [Citation omitted.] Cyanamid's label statement on rotational crop use is thus a mandated disclosure, not a "voluntarily undertaken" promise. [Citation omitted.] The determination that the challenged label statement was required by federal law was essential to the Worm court's decision on the preemption of the express warranty claim.

*Welchert,* 59 F.3d at 72. Indeed, the regulation relied upon in *Welchert* and *Worm II* expressly requires that information regarding rotational crop use be included in the pesticide label:

(2) *Contents of Directions for Use.* The directions for use shall include the following, under the headings "Directions for Use":

\* \* \* \* \* \*

(x) Any limitations or restrictions on use required to prevent unreasonable adverse effects, such as:

\* \* \* \* \* \*

(B) Rotational crop restrictions.

40 C.F.R. Section 156.10(i)(2)(x)(B).

Thus, the Kuipers' argument that FIFRA does not preempt common law claims relating to rotational crop restrictions because such disclosures are not required by the FIFRA regulations is incorrect. Further, the claim that the EPA may not require or review rotational crop studies before approving pesticide labels, even if true, would not alter the Court's conclusion. Such a claim essentially challenges the EPA's approval process and seeks to have the Court, through the vehicle of a state law claim, collaterally review the factual basis for, and accuracy of, an EPA-approved label. This the Court cannot do:

To hold otherwise would be to allow state courts to sit, in effect, as super-EPA review boards that could question the adequacy of the EPA's determination of whether a pesticide registrant successfully complied with the specific labeling requirements of its own regulations. In such case, state court consideration of the label statement would be an "additional" requirement.

*Welchert,* 59 F.3d at 73; *see also, Lewis v. American Cyanamid Company,* 294 N.J.Super. 53, 68, 682 A.2d 724, 732 (App.Div.1996) ("To permit a plaintiff to litigate that cause of action would require a state court to determine the factual basis for the determination made by the EPA and, if that factual basis was erroneous, to decide what the true facts are and how they would affect the EPA's approval of the defendant manufacturer's label.").

■ The Kuipers' second argument addresses the Court's prior conclusion that, as for their claims based on the content of SCEPTER advertising, the critical question for preemption purposes is whether the language relied upon in the advertisements "substantially differ[s]" from the language contained in the EPA-approved label. The Kuipers argue that additional discovery received just prior to the Court's summary judgment decision reveals further evidence that ACC made additional representations in their advertising materials which were "substantially different" from the claim on SCEPTER's label, *i.e.,* that it is safe to plant follow corn 11 months after a SCEPTER application. Such evidence is not new to this case, however. The Kuipers previously submitted advertising materials making the same or similar types of claims. As the Court previously pointed out, the problem with relying upon these materials is that the Kuipers never saw any of the materials before buying and using SCEPTER:

Here, while the Kuipers submitted several exhibits showing representations ACC made about SCEPTER in a number of non-label advertisements and promotional materials, there is no evidence in the record indicating that the Kuipers ever saw any of these materials before purchasing and applying SCEPTER in 1987. In fact, quite the opposite is true. The Kuipers admitted in their depositions that they never saw any advertisements relating to SCEPTER—other than the label—prior to

their use of the product in 1 987. Indeed, the only evidence of a non-label representation relied upon by the Kuipers in 1 987 was Don Spangenberg's statement that it was safe to plant corn as a follow crop to a SCEPTER application. This representation, of course, simply reiterates the sum and substance of the representation found on the label and read by the Kuipers, *i.e.,* that it was safe to plant corn as a follow crop 11 months after a SCEPTER application.

*Kuiper,* 913 F.Supp. at 1244–45. Thus, because Spangenberg's oral statement about SCEPTER's safety vis-a-vis follow corn was not "substantially different" from the rotational crop restriction contained on SCEPTER's EPA-approved label, the Court held that any claims based on that oral statement were preempted. While the Kuipers are generally correct that FIFRA would not preempt claims based on statements contained in SCEPTER advertising that are, "substantially different" from the statements contained in the SCEPTER label, the same presumes that the Kuipers actually read and relied upon the "substantially different" statements in buying or using SCEPTER. If they did not, as is undisputed here, they cannot use such statements to escape FIFRA preemption.[1]

Finally, the Kuipers cite the U.S. Supreme Court's recent decision in *Medtronic, Inc. v. Lohr,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) as having "significantly narrowed the scope of federal preemption". The Court disagrees. *Medtronic* concerned interpretation of the preemptive effect of the Medical Device Amendments of 1976

("MDA"). The MDA is a federal statute which first classifies medical devices into three categories according to the risk they pose to the public. Based on those classifications, the statute then submits those devices to varying degrees of regulation, including a pre-market approval process and manufacturing and labeling requirements. The MDA also contains an express preemption provision, as well as implementing regulations interpreting the scope of that provision. Because of the language of the statute, language quite different from that at issue here, and because of the regulation interpreting the preemption provision, the Supreme Court gave a narrow interpretation to the statute and held that a variety of state common law claims, including claims for failure to warn, were not preempted.

The Kuipers argue that *Medtronic* "substantially reduced" the scope of preemption by holding that "[p]reemption occurs only where a particular state requirement threatens to interfere with a specific federal interest." The Kuipers claim that, as a result of *Medtronic,* "general federal regulations will not preempt state requirements." What the Kuipers fail to point out, however, is that the language they rely upon in *Medtronic* arose from an interpretation of the unique language of the MDA and its implementing regulations. It was not part of a general discussion on the law of preemption, nor did it purport to set forth a general rule governing all future preemption cases. Rather, the Court noted that the MDA "expressly states that a federal requirement must be *'applicable to the device'* in question before it has any

---

**1.** In fact, as the Court noted in its initial decision, such statements are relevant only as a basis for making ACC liable for Spangenberg's misrepresentations. That is, in addition to the preemption argument (a wholly separate basis for dismissal), the Kuipers faced a causation problem, *i.e.,* they never saw any of the underlying advertising materials. At most Spangenberg made a single statement about the product, but Spangenberg was not an ACC agent or employee. How could ACC be held liable for Spangenberg's misrepresentation? As an aside, the Court noted in its prior decision that there was precedent in Wisconsin for holding a manufacturer liable for negligent misrepresentation if it provides written materials to a retailer containing erroneous statements, and it is foreseeable that the retailer

may pass those statements or materials on to the customer. *Kuiper,* 913 F.Supp. at 1241, fn. 2, citing *D'Huyvetter v. A.O. Smith Harvestore Products,* 164 Wis.2d 306, 475 N.W.2d 587, 596–97 (App.1991). In stating this, the Court was simply noting that ACC could be held liable for Spangenberg's misrepresentations, but only insofar as those misrepresentations stemmed from his reading of ACC marketing materials, *and only insofar as they were "substantially different" from statements contained on SCEPTER's EPA-approved label.* Here, Spangenberg simply reiterated information already contained on the label. Any claims based on that statement were preempted, so the Court never had to reach the causation issue.

preemptive effect." *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2256 (emphasis supplied). Further, the Court noted that the federal regulation concerning MDA preemption stated that "a state requirement is not preempted unless the FDA has established 'specific requirements applicable to a particular device.'" *Id.* at 2249, 2256–57. Based on such language, the Court held that the MDA "mandates pre-emption only where there is a conflict between a specific state requirement and a federal requirement 'applicable to' the same device." *Id.* The Court stated that, "[a]lthough we do not believe that *this statutory and regulatory language* necessarily precludes 'general' federal requirements from ever pre-empting state requirements, ... it is impossible to ignore its overarching concern that pre-emption occur only where a particular state requirement threatens to interfere with a specific federal interest." *Id.* at 2257. Thus, the conclusion reached by the Court was entirely dependent on the "statutory and regulatory language" at issue. That language is quite different from the language used in FIFRA. FIFRA does not restrict its preemptive effect to a conflict between state and federal requirements applicable to a "specific" pesticide. Rather, FIFRA expressly preempts "any requirements for labeling or packaging", not "any requirements for labeling or packaging *of a pesticide*".[2] Moreover, FIFRA does not have a corresponding federal regulation which limits its preemptive effect to those cases where a state requirement conflicts with a "specific requirement[ ] applicable to a particular device". Such a regulation, along with the MDA's particular statutory language, was critical to the Court's opinion in *Medtronic.*

One also has to consider the position which the Supreme Court rejected in *Medtronic.* The manufacturer in that case was arguing that the MDA's preemption of different or additional state law "require-

ments" for medical devices preempted *all* state common law damages claims. *Id.* at ——, 116 S.Ct. at 2251. There was no precedent for such a position. While the Supreme Court's *Cipollone* decision did state that the word "requirements" includes state common law claims, the statutory language involved there further limited the preemptive scope to state common law claims "based on smoking and health" and involving the "advertising or promotion of cigarettes. . . ." Thus, in the words of the *Medtronic* Court, "giving the term 'requirement' its widest reasonable meaning did not have nearly the pre-emptive scope nor the effect on potential remedies that Medtronic's broad reading of the term would have in this case. The Court in *Cipollone* held that the petitioner in that case was able to maintain some common-law actions using theories of the case that did not run afoul of the preemption statute." *Id.* at —— ——, 116 S.Ct. at 2251–52. Similarly, the Court's decision in this case noted that FIFRA does not preempt all state common law claims. The statute limits preemption to state common law claims effecting "any requirements for labeling or packaging". It would not preempt claims for negligence or strict liability in the manufacture of pesticides. Nor would it preempt claims for negligent misrepresentation, so long as the representations at issue were substantially different from any information required to be placed on the pesticide label. Thus, the scope of FIFRA preemption is much narrower than that rejected in *Medtronic* and more analogous to what the Supreme Court upheld in *Cipollone. Medtronic* simply does not alter the Court's conclusion in this case.

## II

■ The Kuipers also ask the Court to supplement the record to include the additional items obtained through discovery

---

2. Even if the statute was written in this way, and thus paralleled the MDA, the Court is not convinced that such language merits a different result. The Court tends to agree with Justice O'Connor's dissent in *Medtronic*, which argued that the statutory phrase "applicable to a device" means only what it says, *i.e.*, that the federal or state requirement must generally apply to the device at issue, not that it must apply *only* to the

specific device at issue. *Id.* at —— ——, 116 S.Ct. at 2263–64 (O'Connor, J., dissenting-in-part). Justice O'Connor concluded that, because the statute did not support the "specificity" requirement, the majority could only find such a requirement in the regulations, which Justice O'Connor believed to be an inappropriate basis for narrowing the scope of an otherwise unambiguous statutory provision. *Id.*

which they rely upon here, plus additional deposition transcripts and other evidence on the causation issue. As for the additional evidence obtained just prior to the Court's decision, none of it alters the Court's conclusion on summary judgment. Moreover, such evidence is submitted as a basis for granting relief from the prior judgment. As explained in sections III and IV, infra, such evidence is properly a part of the record on appeal from *the current* decision. It should not be included in the record of the Court's *summary judgment* decision. As for the causation issue, the Court has already explained that it did not have to reach that issue, either in this decision or the summary judgment decision. As such, the Court sees little reason to include it in the record.[3]

## III

The Kuipers next request involves a matter of appellate procedure. Initially, rather than file a notice of appeal, the Kuipers filed the current motion for relief from judgment under Rule 60(b)(6). Under Fed.R.App.P. 4(a)(4)(F), such a motion tolls the running of the appeal period if it is filed "no later than 10 days after the entry of judgment." Judgment was entered in this case on February 15, 1996. The Kuipers' motion was not filed until March 8, 1996. Therefore, the motion did not toll the running of the appeal period. Realizing that the appeal period would expire before the Court addressed their Rule 60 motion, on March 13, 1996 the Kuipers filed a timely motion to extend the time for filing the notice of appeal, along with an actual notice of appeal. The latter was filed to preserve the Kuipers' appeal rights because their underlying motion for an extension

could not be heard before the appeal period expired. The appeal is apparently still pending, although the 7th Circuit suspended any briefing on the matter until this Court decides the Rule 60 motion.

 Despite the pending appeal, the Kuipers ask the Court to extend the time for filing an appeal, and the question becomes whether such an extension is even necessary to preserve their appeal rights. The Court thinks not. Had the motion for relief been filed within 10 days of entry of judgment, it would have tolled the appeal period and the subsequent notice of appeal would have been rendered ineffective. Fed.R.App.P. 4(a)(4). As such, the 7th Circuit would not have jurisdiction over the matter and the appeal would have to be dismissed. *See, Square D Company v. Fastrak Softworks, Inc.,* 107 F.3d 448 (7th Cir.1997). In other words, a timely Rule 59 or Rule 60 motion renders an underlying judgment "non-final", thereby destroying the basis for an appeal. *Kunik v. Racine County,* 106 F.3d 168, 172 (7th Cir. 1997). However, other motions, "such as [the Kuipers'] Rule 60(b) motion[ ] filed more than 10 days after judgment, do not affect the finality of a district court's judgment, either when filed before the appeal (no tolling), or afterwards (appellate court jurisdiction not divested)." *Id.* Moreover, "[m]otions that do toll the time for taking appeal give rise to only one appeal in which all matters are reviewed; motions that do not toll the time for taking an appeal give rise to two separate appellate proceedings that can be consolidated." *Id.* Thus, based on the foregoing, the Kuipers' first notice of appeal was sufficient to initiate and preserve their right to appeal the Court's summary judgment

---

**3.** Curiously, the additional evidence on causation which the Kuipers seek to add seems to hurt their case rather than help it. As the Court stated earlier, the Kuipers face a causation problem because they never saw any of the advertisements containing the misrepresentations which they now rely upon to defeat preemption. The Court noted that they could get around this problem if they could show that Spangenberg was provided with the advertisements at issue and he communicated the substance of those advertisements to the Kuipers. But we already know that the only thing Spangenberg told the Kuipers was that SCEPTER was safe for follow corn. This, of course, is not enough to defeat preemption be-

cause the statement simply reiterates information contained in the SCEPTER label. However, we now learn that there is little evidence, if any, that Spangenberg himself saw any information from ACC other than that contained in the SCEPTER label. Spangenberg testified that the only thing he received at an ACC program regarding the SCEPTER product was a label. (Spangenberg Dep. at 22–23.) While it is possible, perhaps even likely, that the company he worked for received additional promotional materials, Spangenberg has no specific recollection of the same and no recollection of having personally reviewed the same. (*Id.* at 32–34.)

decision. There is no need to extend the time for filing a notice to appeal that decision; the appeal is already commenced. As for the Kuipers' right to appeal the current decision, they must initiate a separate appeal through a second notice of appeal filed within thirty days after the date of this order. The 7th Circuit may consolidate that appeal with the first appeal, but that is not a matter for this Court to decide.[4]

## IV

■ Finally, the Kuipers ask the Court to expand the record on appeal. The request relates to the appeal which they have already commenced. The Court received no objection from ACC to this request. However, two of the items sought to be included—items 42 and 43—were letters submitted in connection with the Rule 60 motion arguing the impact of the Supreme court's *Medtronic* decision. As such, they form part of the record for the second appeal the Kuipers must file, and thus will not be included in the record of the first appeal. The remaining items 48, 49, 54, 58, 65 and 66 relate to the first appeal and shall be included in the record of that appeal.

NOW THEREFORE, BASED UPON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. The Kuipers' motion for relief from judgment is denied;

2. The Kuipers' motion to supplement the record is denied;

3. The Kuipers' motion to extend the time for filing an appeal is denied;

4. The Kuipers' motion for a supplemental order on appeal is denied as moot; and

5. The Kuiper's motion to expand the appellate record is denied-in-part and granted-in-part.

**SO ORDERED.**

---

**4.** The foregoing renders moot the Kuiper's re- quest for a supplemental order on appeal.