Mildred J. OLIVER, et al., Plaintiffs,

v.

RECKITT & COLMAN, INC., Defendant.

No. 96–196–CIV–J–20B.

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 26, 1998.

Timothy Keyser, Michael W. Woodward, Keyser & Woodward, P.A., Interlachen, FL, for Plaintiffs.

Harvey L. Jay, III, Saalfield, Coulson, Shad & Jay, P.A., Jacksonville, FL, for Defendant.

### ORDER

SCHLESINGER, District Judge.

In a previous Order (Doc. No. 34, filed April 2, 1997), the Court partially stayed proceedings and limited discovery to the issue of whether two of the three counts in Plaintiffs' Amended Complaint are pre-empted by the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136–136y. The Court stated that "After receiving and deciding the parties' dispositive

motions on the pre-emption issue, the Court will set a status conference pursuant to Rule 16 of the Federal Rules of Civil Procedure." The Defendant filed its Motion for Summary Judgment on the issue of FIFRA pre-emption on September 2, 1997, *see* Doc. No. 44, and its Amended Memorandum of Law on September 10, 1997. *See* Doc. No. 54. The Plaintiffs filed their Response in Opposition on September 29, 1997. *See* Doc. No. 57.

On or about July 11, 1995, Plaintiff Mildred Oliver ("Oliver") purchased three cans of the Holiday Pine Scent Bug Bomb ("HPSBB") for insect control within her home. She placed one can in the open kitchen and one can in the den. She placed the third can in her kitchen storage cabinets, allowing the contents to expel, and closed the cabinet doors. She also left the pilot light on in the kitchen. When Oliver opened the cabinet door, a fire ball burst out, causing her injury.

The label on the HPSBB stated in part: "Open cabinets and doors in area to be treated. Shut off fans and air conditioners. Put out all flames and pilot lights." The label also stated as follows: "Flammable. Contents under pressure. Do not use or store near heat or open flame."

The HPSBB, as a pesticide product, is subject to the mandates of FIFRA and the labeling regulations established by the Environmental Protection Agency ("EPA"). The language on the HPSBB was initially submitted to the EPA by Boyle–Midway Household Products, Inc. ("Boyle") under the product name Black Flag Fogger IV. The EPA approved this label. Reckitt & Colman, Inc., the Defendant in this action, subsequently registered the Black Flag Fogger IV and distributed the products as the HPSBB. *See* Affidavit of Eileen J. Moyer ("Moyer Aff.") (Doc. No. 47, filed September 2, 1997) at ¶¶ 3–11.

As stated, Defendants argue that counts One and Three of Plaintiffs' Amended Complaint—a count for negligent failure to warn and strict liability—are pre-empted by the Federal Insecticide Fungicide Rodenticide Act ("FIFRA"). In support of their argument, the Defendants cite to the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Eleventh Circuit's decision in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.) ("*Papas II*"), *cert. denied sub nom., Papas v. Zoecon, Corp.*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993), and the district court's decision in *Kennan v. Dow Chemical Co.*, 717 F.Supp. 799 (M.D.Fla.1989). In *Papas II*, the Eleventh Circuit held, based on the Supreme Court's decision in *Cipollone*, that FIFRA expressly pre-empts state common law actions against manufacturers of EPA-registered pesticides to the extent that such actions are predicated on claims of inadequate labeling or packaging. *Papas II*, 985 F.2d at 520. The Court in *Papas II* stated as follows:

> Section 136v(b)[1] pre-empts those of the [Plaintiffs'] state law claims which constitute "requirements for labeling or packaging in addition to or different from" the labeling and packaging requirements imposed under FIFRA. *Cipollone* convinces us that the term "requirements" in section 136v(b) "sweeps broadly and suggests no distinction between positive enactments and the common law." *Cipollone*, 112 S.Ct. at 2620. Common law damages awards are one form of state regulation and, as such, are "requirements" within the meaning of section 136v. *See Id.; Taylor v. General Motors Corp.*, 875 F.2d 816, 824 n. 16 (11th Cir.1989), *citing San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). To the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's "labeling or packaging" failed to meet a standard "in addition to or different from"

---

1. Section 136v states as follows:
   Authority of States
   (a) In General
   A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
   (b) Uniformity
   Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
   7 U.S.C. § 136v(a)–(b).

FIFRA requirements, section 136v preempts the claims.

*Papas II,* 985 F.2d at 518.

Defendant also relies on former United States District Judge Susan Black's decision in *Kennan v. Dow Chemical Co.,* where that court analyzed FIFRA's legislative history and concluded that Congress intended to pre-empt state law regulation of pesticide labeling requirements.

The Plaintiffs make four arguments in opposition to Defendant's Motion for Summary Judgment. First, Plaintiffs argue that the Defendant's label was not only inaccurate, but affirmatively misleading, and thus the product was "misbranded" under the plain language of FIFRA; second, that Oliver was not injured by an insecticide but rather by non-pesticide "inert" propellants, the labeling of which FIFRA and EPA impose little or no pre-emptive regulation or scrutiny; third, that the EPA's regulatory, review and enforcement processes regarding pesticide labeling are—and at the time the Defendant's label was "approved" were—so inadequate and so flawed as to provide no meaningful protection to the public and no reasonable assurance that the Defendant's label met even the minimal standards contemplated by FIFRA; and fourth, that a fair reading and application of FIFRA and Supreme Court case law requires a finding that FIFRA was never intended to—and as actually administered by EPA does not—pre-empt state tort remedies based on claims of inadequate or misleading labeling.

■ Plaintiff's first argument—that Defendant's product was misbranded and therefore not in compliance with FIFRA—is not relevant to the question of whether FIFRA pre-empts Plaintiffs' state law claims. In fact, this argument supports Defendant's contention that FIFRA does apply to Plaintiff's claims because Defendant's conduct allegedly violated this Act. *See Papas II,* 985 F.2d at 518 (rejecting common law liability for alleged misbranding because "it is for the EPA Administrator, not a jury, to determine whether labeling and packaging information is complete or inaccurate, and if so what label changes, if any, should be made.").

■ Plaintiff's second argument—that FIFRA does not regulate inert propellants—must also be rejected. FIFRA regulates pesticides, and pesticides contain both active ingredients and inert ingredients. *See* 7 U.S.C. § 136(u) ("The term 'pesticide' means . . . any substance or *mixture of substances* intended for preventing, destroying, repelling, or mitigating any pest. . . .") (emphasis added); 7 U.S.C. § 136(n)(1) (pesticide contains active and inert ingredients); *id.* (requiring that the percentage of inert ingredients be placed on the label); 40 C.F.R. § 156.10(h)(2)(iii) (requiring that pesticide label contain warning statement on the flammability or explosive characteristics of the pesticide).

There is also no question that the Environmental Protection Agency ("EPA"), the agency charged with regulating FIFRA, *is* concerned with the flammability of the pesticide product. *See, e.g.,* Moyer Aff., Composite Exhibit 2, at p. 4 (letter from George T. LaRocca, Product Manager, Insecticide–Rodenticide Branch, Registration Division, U.S. Environmental Protection Agency) (stating that the label submitted in connection with registration of the product in question under FIFRA would be acceptable provided that a labeling change is made with respect to the product's flammability). Additionally, at least one other court has found that FIFRA pre-empts state law claims involving failure to warn of a bug bomb's flammability. *See Rodriguez v. American Cyanamid Co.,* 858 F.Supp. 127, 128 (D.Ariz.1994) (Where Plaintiffs' mobile home was destroyed by a fire caused by a bug bomb, district court held in previous order that FIFRA pre-empted Plaintiffs' state law claims to the extent that they relied solely upon omissions or inclusions in product labeling.).[2]

■ With respect to Plaintiff's third argument against pre-emption, Plaintiff would essentially have this Court declare that FIFRA, as applied by the EPA, fails to ade-

---

**2.** Additionally, the Court notes that it has not been established that Oliver's injuries resulted solely from the inert ingredients of the pesticide.

To the extent that her injuries resulted in any way from the active ingredients, then Plaintiffs' argument would be moot.

quately protect citizens from pesticide products. Whether FIFRA and the regulations promulgated by the EPA effectively protect citizens is not relevant to the issue of preemption. If Congress intended FIFRA to pre-empt state law, the Court is required to apply FIFRA, regardless of its effectiveness.

Finally, Plaintiffs' fourth argument is that, notwithstanding the numerous courts that have held otherwise, it is a mistake to argue that Congress intended to pre-empt state common law tort actions with the enactment of FIFRA, particularly in light of the Supreme Court's holding in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).[3]

Unless this Court finds that 'the Supreme Court's decision in *Medtronic* overrules those cases holding that FIFRA pre-empts state tort claims based on labeling, the Court is bound by the Eleventh Circuit's holding in *Papas II* which specifically held that FIFRA pre-empts such claims. The issue of whether *Medtronic* changes FIFRA pre-emption law has been addressed by other courts. For example, in *Kuiper v. American Cyanamid Co.,* 960 F.Supp. 1378 (E.D.Wis.1997), Plaintiff purchasers of a herbicide sued the herbicide manufacturer for crop damage allegedly caused by the product. Defendant argued that the state law tort claims were pre-empted by FIFRA. In response, Plaintiffs argued that *Medtronic* "significantly narrowed

the scope of federal preemption." *Id.* at 1383. The court in *Kuiper* disagreed, stating that "Because of the language of the [MDA], language quite different from that at issue here [in FIFRA], and because of the [FDA's] regulation interpreting the preemption provision, the Supreme Court [in *Medtronic* ] gave a narrow interpretation to the statute and held that a variety of state common law claims, including claims for failure to warn, were not preempted." *Kuiper,* 960 F.Supp. at 1383.[4] The court pointed out that the Supreme Court did not "purport to set forth a general rule governing all future preemption cases." Rather, the Supreme Court's decision was based on the specific statutory and regulatory language of the MDA, language different from the language in FIFRA, and concluded that "the scope of FIFRA preemption is much narrower than that rejected in *Medtronic* and more analogous to what the Supreme Court upheld in *Cipollone.*" *Id.* at 1384; *see also Wolpin v. Philip Morris, Inc.,* 974 F.Supp. 1465, 1469 (S.D.Fla.1997) (*citing Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993) ("Not even the most dedicated hair-splitter could distinguish" between the Federal Cigarette Labeling and Advertising Act provision and the FIFRA provision)).

Likewise, the United States District Court for the District of New Jersey rejected Plaintiffs' argument that *Medtronic* effectively

---

**3.** In *Medtronic*, the Supreme Court addressed the issue of whether the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act (the "MDA"), Pub.L. No. 94–295, 90 Stat. 552 (1976) (codified as amended in scattered sections of 21 U.S.C.) preempts state common-law tort claims brought against the manufacturer of an allegedly defective medical device.

**4.** The MDA states in pertinent part:

(a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

The MDA also provides the FDA with authority to create requirements that are exempt from preemption:

(b) Exempt requirements

Upon application of a State or a political subdivision thereof, the Secretary may, by regulation promulgated after notice and opportunity for an oral hearing, exempt from subsection (a) of this section, under such conditions as may be prescribed in such regulation, a requirement of such State or political subdivision applicable to a device intended for human use if—

(1) the requirement is more stringent than a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

(2) the requirement—

(A) is required by compelling local conditions, and

(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter.

21 U.S.C. § 360k(b).

overturned the numerous cases citing *Cipollone* to conclude that common law claims are preempted by federal regulations. *See Hawkins v. Leslie's Poolmart*, 965 F.Supp. 566 (D.N.J.1997). The court relied, in part, on the First Circuit's decision in *Grenier v. Vermont Log Buildings, Inc.*, 96 F.3d 559 (1st Cir.1996), decided after *Medtronic*, which held that FIFRA preempted Plaintiff's failure to warn claims and which relied on *Medtronic* only for the proposition that courts must look first to the language of an express pre-emption clause and that the word "requirements" presumptively includes state causes of action as well as laws and regulations. *Hawkins*, 965 F.Supp. at 571. The court in *Hawkins* also relied on a New Jersey Appellate Division decision in which that court explicitly distinguished *Medtronic* from *Cipollone* and concluded that FIFRA pre-empts state law failure to warn claims. *Hawkins*, 965 F.Supp. at 572 (*citing Lewis v. American Cyanamid Co.*, 294 N.J.Super. 53, 682 A.2d 724 (App.Div.1996)). Other courts have also continued to find FIFRA pre-emption after *Medtronic*. *See Koch v. Shell Oil Co.*, 173 F.R.D. 288, 289–90 (D.Kan.1997) (holding that *Medtronic* does not alter clear Tenth Circuit law holding that common-law labeling claims are pre-empted); *Cuevas v. E.I. DuPont De Nemours & Co.*, 956 F.Supp. 1306, 1313 (S.D.Miss.1997) (decided after *Medtronic*, but not mentioning that decision, and relying on *Cipollone* and two earlier Southern District of Mississippi cases holding that FIFRA pre-empts state labeling claims); *Deshotel v. Rhone–Poulenc, Inc.*, 969 F.Supp. 397, 402 (W.D.La.1997) (decided after *Medtronic*, but not mentioning that decision, and relying on *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1025 (5th Cir.1994), to find FIFRA pre-emption of state judgments resulting from claims based on failure to warn, failure to conform to an express warranty, and breach of an express warranty); *Deangelis v. E.I. Dupont De Nemours & Co.*, 1996 WL 510092, at *2 (E.D.Pa. Sept. 5, 1996) (decided after *Medtronic*, but not mentioning that decision, and stating that "it is well established that the Plaintiff's state law failure to warn claims based on the inadequate labeling of the Defendants' chemical herbicide products are pre-empted by FIFRA."). The Court finds these other district court decisions persuasive.

Indeed, this Court's own reading of the decision in *Medtronic* leads the Court to the conclusion that Plaintiffs cannot maintain their state law actions based on the HPSBB's allegedly inadequate label. The Court in *Medtronic* began its discussion by rejecting the argument that the plain language of the statute pre-empts any and all common-law claims brought by an injured plaintiff against a manufacturer of medical devices. 116 S.Ct. at 2251. It did so in part by distinguishing the use of the word "requirements" as found in the Cigarette Labeling Act with the use of the word in the MDA. The Court in *Medtronic* found that the word requirements was used throughout the text of the MDA, and that "[i]n each instance, the word is linked with language suggesting that its focus is device-specific enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries." 116 S.Ct. at 2252. This Court would note, however, that the word "requirements" in FIFRA is not linked with language suggesting that its focus is enactments of positive law by legislative or administrative bodies. *See* 7 U.S.C. §§ 136–136y; *Papas II*, 985 F.2d at 518.

Further, the Court's decision in *Medtronic* was influenced by the authority given to the FDA, an authority not given to the EPA:

> Unlike the statute construed in *Cipollone* ... pre-emption under the MDA does not arise directly as a result of the enactment of the statute; rather, in most cases a state law will be pre-empted only to the extent that the FDA has promulgated a relevant federal "requirement."

> \*     \*     \*     \*     \*     \*

> ... Congress explicitly delegated to the FDA the authority to exempt state regulations from the pre-emptive effect of the MDA—an authority that necessarily requires the FDA to assess the preemptive effect that the Act and its own regulations will have on state laws.

> \*     \*     \*     \*     \*     \*

The ambiguity in the statute—and the congressional grant of authority to the agency on the matter contained within it—provide

a "sound basis" ... for giving substantial weight to the agency's view of the statute. *Medtronic,* 116 S.Ct. at 2255–56.

The Plaintiffs in *Medtronic* also argued that because the MDA and its regulations make clear that pre-emption should be found only where a particular state requirement threatens to interfere with a specific federal interest, the Court of Appeals should not have concluded that the MDA pre-empted manufacturing and labeling claims altogether. *Id.* at 2256. Looking at the statute and its regulations, the Court agreed, stating that the Plaintiffs' common law claims were not pre-empted by the federal labeling requirements because the "federal requirements reflect important but entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements." *Id.* at 2258. The Court explained that "the predicate for the failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use" and summarized that "These state requirements therefore escape pre-emption, not because the source of the duty is a judge-made common-law rule, but rather because their generality leaves them outside the category of requirements that § 360k envisioned to be 'with respect to' specific devices such as pacemakers." *Id.* The Court's rejection of Defendant's argument in this manner demonstrates the importance of the specific language of the MDA to the Court's decision and also convinces this Court that FIFRA pre-emption law should not be changed. As stated by the district court in *Kuiper,*

> FIFRA does not restrict its preemptive effect to a conflict between state and federal requirements applicable to a 'specific' pesticide. Rather, FIFRA expressly preempts 'any requirements for labeling or packaging', not 'any requirements for labeling or packaging of a pesticide'. Moreover, FIFRA does not have a corresponding federal regulation which limits its preemptive effect to those cases where a state requirement conflicts with a 'specific

requirement applicable to a particular device'.

*Kuiper,* 960 F.Supp. at 1383–84.

Plaintiffs argue that the courts upholding FIFRA pre-emption law in the wake of *Medtronic* have mistakenly assumed that FIFRA, like the Cigarette Labeling Act, imposes comprehensive, detailed, specific requirements and regulations for labeling; Plaintiffs argue that FIFRA, with its general requirement that labels include warnings "adequate to protect health," 7 U.S.C. 136(q)(1)(G), is more like the MDA. The Court notes, however, that the EPA regulations do contain specific language for pesticide product labels. *See* 40 C.F.R. § 156.10. Plaintiffs also argue that these courts have the mistaken assumption that the EPA actually subjects pesticides and their labeling to thorough regulatory scrutiny, and as evidence, they cite to the Report of the Office of Inspector General concerning the labeling of pesticides. *See* Audit Report *attached to* Plaintiff's Response in Opposition (Doc. No. 57, filed September 29, 1997). However, as discussed above, whether FIFRA has effectively protected the public is not relevant to whether Congress intended FIFRA to preempt state law tort claims; it is only relevant that FIFRA and its regulations *"provide for* rigorous EPA review." *See Hawkins,* 965 F.Supp. at 572 (emphasis added).

In accordance with the foregoing it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 44) is **GRANTED;**

(2) Counts One and Three of Plaintiffs' Amended Complaint, as they are preempted by FIFRA, are hereby **DISMISSED;** and

(2) The case is set for status conference before the undersigned in Courtroom No. 1, Fifth Floor, U.S. Courthouse, Jacksonville, Florida on **Thursday, February 19, 1998, at 8:30 A.M.**