Mark Woollums, Davenport, IA, argued (Jean Dickson Feeney, on the brief), for appellant.

Gregory G. Barntsen, Council Bluffs, IA, argued, for appellees.

Before McMILLIAN, FAGG and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

American Cyanamid Co. (Cyanamid) appeals from a final judgment entered in the United States District Court for the District of Nebraska upon a jury verdict finding it liable to plaintiffs for breach of an express warranty. The jury awarded damages to plaintiffs Deborah and Jerry Welchert in the amount of $61,430.60 and to plaintiffs Donald and Rick Welchert in the amount of $55,-734.25. For reversal, Cyanamid argues that the district court erred in refusing to grant its motion for judgment as a matter of law because the claims of breach of express warranty were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y. For the reasons discussed below, we reverse.

Donald **WELCHERT, Rick Welchert, Jerry Welchert, Deborah Welchert, Appellees,**

v.

**AMERICAN CYANAMID, INC., Appellant.**

No. 94–3336.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1995.

Decided June 26, 1995.

## I. BACKGROUND

The facts in the present case are largely uncontroverted. In 1989, Deborah and Jerry Welchert began raising vegetables as a commercial enterprise. To that end, they leased land in Fort Calhoun, Nebraska. The following year, Deborah and Jerry Welchert decided to lease a different tract of land. They, therefore, leased approximately 38 acres of land southeast of Blair, Nebraska. Jerry's brother, Rick, also farmed this property. Before Deborah and Jerry Welchert began farming these 38 acres, they were not told, nor did they ask, whether any chemicals had been applied to the ground which might interfere with the planting and cultivating of vegetables.

Soon after they began planting vegetables on this tract, they observed growth problems. Some time after they noticed these problems, they learned that Pursuit, a herbicide manufactured by Cyanamid, had been applied to the land in 1989. After Deborah Welchert made this discovery, someone provided her with a Pursuit Plus label. Pursuit Plus is also a herbicide manufactured by Cyanamid. They are, however, two different products. Deborah Welchert reviewed the Pursuit Plus label with her husband Jerry, and his brother, Rick. Specifically, they focused on a paragraph which stated that other rotational crops, such as vegetable crops, could be planted eighteen months after an application of Pursuit Plus. Deborah Welchert also met with a Cyanamid representative in 1990. The only statement which he remembered making to Deborah with regard to the damage to her vegetable crops was that, according to the label, it would be safe to plant after eighteen months.

Relying on the language of the Pursuit Plus label, Jerry and Deborah Welchert planted crops again in 1991 but experienced the same growth problems. Also in 1991, brothers Rick and Donald Welchert leased fourteen acres of land for the purpose of vegetable farming. In May 1989, this property was treated with Pursuit Plus. Rick never actually read the Pursuit Plus label. Rather, he relied on what Deborah had related to him regarding its contents. Donald, in turn, relied only on what Rick told him about

the eighteen-month rotational crop period. The vegetables they planted in 1991 also suffered growth problems.

Plaintiffs Deborah, Jerry, Don, and Rick Welchert (the Welcherts) filed this action in the United States District Court for the Southern District of Iowa in October 1991, seeking recovery for damage to their vegetable crops allegedly caused by Pursuit and Pursuit Plus. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. On November 16, 1992, Cyanamid filed a motion for summary judgment on the various claims asserted in the Welcherts' complaint. On August 27, 1993, the district court found there were material facts in dispute regarding which one of the Welcherts actually read the warranty language and at what point in time, and disputed fact issues regarding the alleged unconscionability of the warranty language. *Welchert v. American Cyanamid Co.*, Civil No. 1–91–CV–20057 (S.D.Iowa Aug. 27, 1993) (Order). The district court also held, however, that the Welcherts' claims for inadequate labeling were preempted by FIFRA. *Id.* at 4. The district court then transferred the case to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404.

On September 15, 1993, the United States Court of Appeals for the Fourth Circuit decided the case of *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir.1993) (*Worm*), in which the court held that the plaintiffs' express and implied warranty claims based on a herbicide label were preempted under FIFRA. As a result of the Fourth Circuit's ruling, Cyanamid filed a motion to reconsider in the present case. The district court for purposes of clarity construed the motion as simply another motion for summary judgment. The district court held that the implied warranty claims were preempted by FIFRA, but that the express warranty claims were not. *Welchert v. American Cyanamid Co.*, No. 8:CV93–00508 (D.Neb. Feb. 14, 1994) (Order). Cyanamid then requested certification of the issue for immediate appellate review, but the district court denied the request. After the jury returned its verdict, the district court again denied Cyanamid's renewed motion for judgment as

a matter of law. *Id.* (Aug. 19, 1994) (Order). This appeal followed.

## II. DISCUSSION

FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging.[1] *See Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 601, 111 S.Ct. 2476, 2479–80, 115 L.Ed.2d 532 (1991). Furthermore, all pesticides sold in the United States must be registered with the Environmental Protection Agency (EPA).[2] *See* 7 U.S.C. § 136a(a). "The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use of pesticides." *Worm,* 5 F.3d at 747. FIFRA establishes an complex process of EPA review that culminates in the approval of a label under which a product may be marketed. Manufacturers must submit draft label language addressing a number of different topics, including ingredients, directions for use, and adverse effects of the products, *see* 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50 & pt. 156, and a final label must be submitted to the EPA prior to registration. 40 C.F.R. § 156.10(a)(6).

Section 24 of FIFRA, as amended, provides in part:

**(a) In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

**(b) Uniformity**

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a), (b). At issue in the present case is the extent to which subsection (b) preempts a state law cause of action for breach of an express warranty.

The Supreme Court's decision in *Cipollone v. Liggett Group,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (*Cipollone*), includes an extensive analysis of a preemption provision in the Public Health Cigarette Smoking Act of 1969 ("1969 Act"), 15 U.S.C. §§ 1331–1340, which is substantially similar to the preemption provision in FIFRA.[3] In *Cipollone,* the plaintiff brought an action against three cigarette companies in connection with the death of his wife, who had lung cancer. Among his stated causes of action, the plaintiff based a claim for breach of an express warranty on many statements made in the cigarette manufacturers' advertising. Justice Stevens, in a plurality opinion joined by three other members of the Court, explained why this claim would survive preemption: "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirements' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor.*" *Id.* at 525, 112

---

1. The definition of "pesticide" under FIFRA includes herbicides. *See* 7 U.S.C. § 136(u).

2. We note that, before a pesticide can be registered with the EPA, the Administrator must determine whether:

    (A) its composition is such as to warrant the proposed claims for it;

    (B) its labeling and other material required to be submitted comply with the requirements of [FIFRA];

    (C) it will perform its intended function without unreasonably adverse effects on the environment; and

    (D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonably adverse effects on the environment.

7 U.S.C. § 136a(c)(5)(A)–(D). The corresponding federal regulation provides in part that the EPA will approve an application under the criteria of FIFRA § 3(c)(5) only if:

    The Agency has determined that the product is not misbranded as that term is defined in FIFRA sec. 2(q) and part 156 of this chapter, and its labeling and packaging comply with the applicable requirements of the Act, this part, and parts 156 and 157 of this chapter.

40 C.F.R. § 152.112(f).

3. The 1969 Act replaced § 5(b) of the Federal Cigarette Labeling and Advertising Act of 1965, 15 U.S.C. § 1334(b), with the following language: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."

S.Ct. at 2622 (italics in original). Noting the contractual nature of express warranty claims, the plurality opinion further provided that "a common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement ... imposed under State law' within the meaning of § 5(b)." *Id.* Accordingly, the plurality concluded that such claims were not preempted under the 1969 Act.[4]

In *Worm,* the Fourth Circuit was faced with a set of facts very similar to those before us. The plaintiffs planted sweet corn on land that had previously been treated with Scepter, another Cyanamid herbicide. The Scepter label, which had been approved by the EPA, stated that corn could be safely planted eleven months after application of the herbicide. The corn, planted about a year after application, did not do well and had to be plowed under. The plaintiffs' filed a state court suit, which was subsequently removed, alleging a number of claims including a claim for breach of express warranty based on the language of the label. 5 F.3d at 746. The plaintiffs argued that the express warranty claim was not preempted by FIFRA because the label's language on the period of carryover effect[5] was voluntarily provided. The plaintiffs thereby attempted to employ the plurality's analysis in *Cipollone* to save their express warranty claim from preemption under § 24(b) of FIFRA. Addressing this argument, the Fourth Circuit noted that "American Cyanamid's inclusion on its label of the information that corn could be safely planted 11 months following application of Scepter was not voluntary." *Worm,* 5 F.3d at 749. Such statements are in fact required by regulations adopted under FIFRA. *See* 40 C.F.R. § 156.10(i)(2)(x)(B). The court therefore concluded that, "[b]e-

cause the [plaintiffs] point[ed] to no statement made by American Cyanamid other than that required and approved by the EPA, their warranty claims [we]re preempted" *Worm,* 5 F.3d at 749. More recently, the Fourth Circuit restated its conclusion in *Worm* that "an express warranty claim based on EPA approved labeling materials is preempted." *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 129 (4th Cir.1994).

We are faced with precisely the same issue. The express warranty claim of the Welcherts is based entirely on the label's statement with regard to the herbicide's carryover effect. They have not alleged that Cyanamid made any other statements with regard to the product which might serve as the basis for their express warranty claim. As noted in *Worm,* federal regulation requires a pesticide manufacturer to provide labeling information about rotational crop restrictions. 5 F.3d at 749. Cyanamid's label statement on rotational crop use is thus a mandated disclosure, not a "voluntarily undertaken" promise. *See Higgins v. Monsanto Co.,* 862 F.Supp. 751, 761 (N.D.N.Y.1994) (*Higgins*) ("[E]xpress warranties have a voluntary quality, which is missing if they are mandated by EPA. The rationale that warrantors should be held to contracts that they voluntarily enter into does not apply when their actions are forced."). The determination that the challenged label statement was required by federal law was essential to the *Worm* court's decision on the preemption of the express warranty claim. The *Worm* court further rejected the plaintiffs' argument that claims of breach of express warranty were not preempted because it "suggest[ed] that what was approved by the EPA

---

4. Dissenting in part, Justice Scalia criticized the distinction the plurality made between an obligation created by the warrantor and one imposed by state law. He reasoned it is the legal effect given to the warrantor's representation that is decisive. Thus, he concluded that the plaintiff's express warranty claims would have been preempted under § 5(b) of the Federal Cigarette Labeling and Advertising Act of 1965, as amended by the Public Health Cigarette Smoking Act of 1969. *Cipollone v. Liggett Group,* 505 U.S. 504, 549–51, 112 S.Ct. 2608, 2635, 120 L.Ed.2d 407 (1992) (Scalia, J., concurring in the judgment in

part and dissenting in part). Justice Blackmun filed an opinion concurring in part and dissenting in part, in which he argued that neither version of § 5(b) preempted state law causes of action for damages. *Id.* at 531–45, 112 S.Ct. at 2625–32 (Blackmun, J., concurring in part and dissenting in part).

5. The term "carryover effect," as used in this opinion, refers to the length of time that an application of a pesticide might harm subsequently planted crops.

was inadequate for purposes of establishing a state cause of action." 5 F.3d at 749.

In the present case, like *Worm*, the Welcherts' express warranty claim arose solely on the basis of a labeling statement specifically required by federal law and approved by the EPA. For the purposes of our preemption analysis in the present case, we believe that the Fourth Circuit's use of the phrase "required and approved by the EPA," when characterizing the label statement challenged by the plaintiffs in that case, properly limits the scope of FIFRA's preemption of state law breach of express warranty claims. *See Higgins*, 862 F.Supp. at 761 ("This court reads the operative word 'and' as indicating the Fourth Circuit's intention to preempt only those express warranty claims that are [based on] EPA mandated [labeling].").  Because the Welcherts' state law express warranty claim challenges only language specifically required and approved by the EPA, the exception for "voluntarily undertaken" commitments provided by the *Cipollone* plurality cannot be applied in the present case to save the Welcherts' express warranty claim from preemption.[6] Where Congress has so clearly put pesticide labeling regulation in the hands of the EPA, the Welcherts' claim challenging the accuracy of the herbicide label's federally-mandated and approved statement cannot survive. *See Worm*, 5 F.3d at 748 ("Because the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one.").  To hold otherwise would be to allow state courts to sit, in effect, as super-EPA review boards that could question the adequacy of the EPA's determination of whether a pesticide registrant successfully complied with the specific labeling requirements of its own regulations. In such case, state court consideration of the label statement would be an "additional" requirement. In light of the extensive federal statutory and regulatory provisions on pesticide registration and labeling requirements, the preemptive language

of § 24(b) of FIFRA must be read to preclude the Welcherts' claim. Consequently, we hold that their state law claim for breach of an express warranty is preempted by FIFRA.

### III.  CONCLUSION

Because we find the preemption issue to be dispositive, we need not address the other issues raised on this appeal. For the reasons discussed above, the judgment of the district court is reversed.

---

6.  A label statement specifically required by FIFRA and its corresponding federal regulations does not have the contractual quality of an express warranty. As noted above, it is in the

nature of a mandatory disclosure. Thus, any misrepresentation, negligent or otherwise, in such disclosure would therefore sound, if at all, in tort, not contract.